IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| SHIRLEY O. FOUGHT,<br><br>    Plaintiff,<br><br>vs.<br><br>UNUM LIFE INSURANCE<br>COMPANY OF AMERICA,<br><br>    Defendant. | No. CIV 01-0124 PK/JHG (ACE) |

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendant's ["UNUM's"] Motion for Summary Judgment filed March 10, 2002 (Doc. 33). Upon consideration thereof,

(1) <u>Background.</u> This case involves a plan administrator's denial of disability benefits under a group long-term disability insurance policy issued by UNUM to Ms. Fought's employer as part of an employee benefit plan. Ms. Fought enrolled in the plan on May 18, 1998. The effective date of the policy was June 1, 1998. In her amended complaint, Ms. Fought has claims for disability benefits, 29 U.S.C. § 1132(a)(1)(B), and for breach of fiduciary duty, 29 U.S.C. § 1132(a)(2), (3). The court agrees with UNUM that the breach of fiduciary duty claim is duplicative of the claim for benefits, and that the latter is

exclusive in these circumstances. See Varity Corp. v. Howe, 516 U.S. 489, 515 (1996); Montesano v. Xerox Corp., 256 F.3d 86, 88 (2d Cir. 2001); McCall v. Burlington N./Santa Fe Co., 237 F.3d 506, 512 (5th Cir. 2000), cert. denied, 122 S. Ct. 57 (2001); see also Moore v. Berg. Enter. Inc., No. 98-4080, 1999 WL 1063823, *2 n.3 (10th Cir. Nov. 23, 1999).

(2) Ms. Fought's Health Conditions. Prior to enrolling in the plan, Ms. Fought had been diagnosed with severe coronary artery disease. In August 1998, she underwent angioplasty. In March 1999, Ms. Fought underwent heart bypass surgery. During the operation, Ms. Fought's surgeon discovered that Ms. Fought's sternum (breastbone) was quite narrow and showed signed of osteoporosis (reduction in bone mass). In his initial attempt to reapproximate the sternum, the surgeon reported that the wires used started tearing through the sternum. UFOU-396. He removed them and then used a special procedure (Robichek procedure) to wire the sternum back together before closing the incision. He reported:

> Because of the large and pendulous breasts as well as significant adiposity, the lower portion of the skin incision was also at risk of dehiscence [splitting open] as indeed was the full sternum. Clearly her postoperative course was anticipated to be quite challenging given the concerns about the wound as indeed her other medical problems.

Ms. Fought's discharge report indicated that "[t]here is some concern in regard to her sternal incision site due to her obesity," but there was no evidence of

infection. UFOU-410. Unfortunately, a few weeks after surgery, the surgical incision above Ms. Fought's sternum dehisced. She was admitted to the hospital "for wound care of this sternal dehiscence and quite possibly sternal infection." UFOU-275; see also UFOU-274 (identifying "several risk factors for sternal wound dehiscence and infection"). Ms. Fought subsequently developed a severe staph infection at the site of the incision. UFOU-490. She cannot return to work.

(3) Policy Provisions. The policy contained an exclusion based upon pre-existing conditions:

> WHAT DISABILITIES ARE NOT COVERED UNDER YOUR PLAN?
> Your plan does not cover any disabilities caused by, contributed to by, or resulting from your:
> . . . .
>  - pre-existing condition
> . . . .
> WHAT IS A PRE-EXISTING CONDITION?
> You have a pre-existing condition when you apply for coverage when you first become eligible if:
> -you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 3 months just prior to your effective date of coverage; or you had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 months just prior to your effective date of coverage; and
> -the disability begins in the first 12 months after your effective date of coverage.

UFOU-13 to 14. Thus, the pre-existing condition exclusion ran from March 1, 1998 (three months prior to the June 1, 1998, effective date of coverage), to May

31, 1999 (the first twelve months after the June 1, 1998, effective date of the coverage) if the first condition was satisfied.

(4) <u>UNUM's Denial of Ms. Fought's Claims and Subsequent Appeals.</u> The initial claim for benefits on behalf of Ms. Fought was submitted in June 1999. It reported that Ms. Fought's first symptoms were chest pain occurring on March 9, 1999 and that she was unable to work due to open heart surgery. UFOU-198. This was corroborated by information supplied by the employer. UFOU-183, 185. UNUM relied upon the pre-existing condition exclusion. It denied the claim on the grounds that Ms. Fought was treated on March 16, 1998, and diagnosed with various conditions,[1] including her cardiac condition, that "caused, contributed to, or resulted in the condition(s) for which you are now claiming disability." UFOU-107; <u>see also</u> UFOU-343. Ms. Fought appealed and submitted a note from her treating physician "that the staph infection which is the basis for multiple wounds on the chest is not related to coronary artery disease. This is a separate, unrelated diagnosis without preceding history." UFOU-499. UNUM affirmed its denial of the claim on the same grounds explaining "that the staph infection was the result of surgery performed for a cardiac condition that was caused by, contributed to by, or resulted from the cardiac condition that was

---

[1] Those conditions were "poorly controlled systemic hypertension, severe left ventricular hypertrophy with abnormal diastolic function, and possible left ventricular hypertrophy." UFOU-107

present, diagnosed and treated during the pre-existing period." UFOU-535. Ms. Fought appealed again on the theory that the staph infection was not pre-existing and submitted notes from her doctors that the staph infection was not a pre-existing condition. UFOU-544. UNUM reaffirmed its denial reasoning that "the staph infection is caused by, contributed to by, or related to the CAD [coronary artery disease] as she would not have had the surgery + the resultant wound infection if she did not have the CAD which was being treated by the surgery." UFOU-577 to 578.

(5) <u>Summary Judgment Standard.</u> Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A movant is responsible for identifying the basis of its motion, which it may support with material demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Here, UNUM as the movant relies upon the administrative record which is appropriate because it contains the evidence and arguments before the decision maker. <u>Chambers v. Family Health Plan Corp.</u>, 100 F.3d 818, 823-24 (10th Cir. 1996); <u>Sandoval v. Aetna Life & Cas. Ins. Co.</u>, 967 F.2d 377, 380 (10th Cir. 1992). In opposing a summary judgment motion, the non-movant may not rest upon her pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Here, Ms. Fought also relies upon the administrative record, a medical

record and her own affidavit. It is doubtful that the items outside the record should be considered; regardless, even considering them, summary judgment in favor of UNUM is warranted.

A court considers all evidence and reasonable inferences therefrom in the light most favorable to the non-movant; however, that material must contain probative evidence that would allow a trier of fact to find in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Disputes about immaterial facts will not preclude summary judgment. Id. at 248.

(6) Abuse of Discretion Standard for Review of the Administrator's Denial of Benefits. The policy provides that UNUM had discretion to determine eligibility for benefits and to interpret the plan. UFOU-26. Accordingly, UNUM's denial of benefits falls under the "abuse of discretion" standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In the Tenth Circuit, "[i]ndicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith and conflict of interest by the fiduciary." Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1282 (10th Cir. 2002). Because UNUM as an insurer is both the claims administrator and the payor, a sliding scale abuse of discretion standard applies recognizing UNUM's inherent conflict of interest. See id.; Pitman v. Blue Cross & Blue Shield of Okla., 217 F.3d 1291, 1296-97 (10th Cir. 2000); see also Doc. 28 at 4 (UNUM conceding that it has an inherent conflict of interest to which a sliding scale abuse of

discretion standard should apply). Ms. Fought argues that the sliding scale should be weighed heavily against UNUM because it is a for-profit insurer that drafted the policy provision in question and its interpretation is tainted by its conflict of interest. Her argument rests in part on the doctrine of contra proferentem (ambiguous terms are construed against the drafter), which is inapplicable when benefit denials under ERISA plans are reviewed for an abuse of discretion. <u>Kimber v. Thiokol Corp.</u>, 196 F.3d 1092, 1100-01 (10th Cir. 1999). Fully recognizing UNUM's conflict of interest, the guiding inquiry must be whether the plan administrator's decision was objectively reasonable given the administrative record–not whether a different reasonable decision could have been made.

(7) <u>UNUM Did Not Abuse Its Discretion in Denying Benefits.</u> Applying that standard, UNUM did not abuse its discretion in denying benefits for the reason that Ms. Fought's disability (staph infection) was "caused by, contributed to by, or resulting from" her cardiac problems that occurred during the pre-existing period. There is no dispute that Ms. Fought's cardiac condition was a pre-existing condition. Ms. Fought's argument is that because the dehiscence of her sternal wound occurred weeks after her surgery and thereafter she tested positive for staph, the claims administrator was required to view the cardiac condition as separate and distinct from the staph infection (and her resultant inability to work). Doc. 37 at 2-3. However, the disabling condition and pre-

existing condition need not be identical; otherwise, the expansive language "caused by, contributed to by, or resulting from" would be superfluous. Nor is a claims administrator required to have evidence in the record that coronary artery disease causes staph infection; rather, the course of treatment resulting from the coronary artery disease may be considered. Here, the staph infection is related to the coronary artery disease as a foreseeable complication of treatment. See Holsey v. UNUM Life Ins. Co., 944 F. Supp. 573, 579 (E.D. Mich. 1996) (blindness was caused by, contributed to by or resulted from diabetes where blindness was related to diabetes and glaucoma was a well-known complication of diabetes; preexisting condition exclusion enforced)[2]; see also Currie v. Metropolitan Life Ins. Co., No. CIV. A. 97-1665, 1998 WL 214761 at * 3-4 (E.D. La. April 29, 1998) (rejecting argument that plaintiff was suffering from a different sickness or injury when she received treatment within the pre-existing period; all treatment stemmed from a prior car wreck; preexisting condition exclusion enforced).

(8) She also argues that had UNUM wanted to exclude medical or surgical treatment of a pre-existing condition from coverage, as opposed to excluding the

---

[2] Ms. Fought distinguishes Holsey on the grounds that she promptly notified UNUM that her disability was the result of a staph infection and her doctors submitted statements corroborating her theory that it was not a pre-existing condition. These differences do not suggest a different result–neither prompt notification nor the doctors' general statements address the pre-existing condition language of the policy.

pre-existing condition itself, UNUM should have done so. She relies upon Kaus v. Standard Ins., 985 F. Supp. 1277, 1279 (D. Kan. 1997), aff'd, 162 F.3d 1173, No. 97-3378, 1998 WL 778055 (10th Cir. Nov. 5, 1998), where the pre-existing condition exclusion included "medical or surgical treatment of a Preexisting Condition." While the exclusion may be clearer in Kaus, the language "caused by, contributed to by, or resulting from" a pre-existing condition is broad enough to encompass the treatment received in this case.

She also points out that UNUM's interpretation leads to absurd results, "the exclusion would operate to exclude coverage for disabilities caused by such things as allergic reactions to drugs taken in treatment of a pre-existing condition; the entire range of complications that may arise from surgical procedures (blood clots, strokes, nerve damage, infections, etc.); acts of medical malpractice and the like." Doc. 37 at 16. Focusing on the facts in this case, however, leads to the conclusion that UNUM's denial is reasonable because the complication of dehiscence of the sternal wound was foreseeable at the time of the cardiac surgery. Indeed, she had a "several day prolonged hospital stay" after the cardiac surgery "because of concerns over her sternal wound, given her marked obesity." UFOU- 275. Ms. Fought's providers were concerned about infection, UFOU- 410, 413, and when the dehiscence occurred, Ms. Fought's doctors ordered treatment including antibiotics to prevent an infection from developing. UFOU- 303. The record is replete with evidence of the linkage between the coronary

-9-

artery disease, its treatment, and the anticipated complications arising from that treatment.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:

(1) that Plaintiff's May 10, 1992, letter request for oral argument is denied, and

(2) that Defendant's Motion for Summary Judgment filed March 10, 2002 (Doc. 33) is granted.

DATED this 31st day of May 2002, at Santa Fe, New Mexico.

_____
Paul Kelly, J.
United States Circuit Judge
Sitting by Designation

Counsel:

Robert P. Warburton and Ray M. Vargas, II, Sheehan, Sheehan & Stelzner, P.A., Albuquerque, New Mexico, for Plaintiff.

Kathryn D. Lucero and Kerri L. Peck, Foster, Johnson, McDonald, Lucero, Koinis, Albuquerque, New Mexico, for Defendant.